Submit order.

**CONGRESS OF RAILWAY UNIONS,
Plaintiff,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission,
Defendants.**

**Civ. A. No. 1541–73.**

United States District Court,
District of Columbia.

March 5, 1974.

Robert E. McGlynn, Belleville, Ill., for plaintiff.

Richard Streeter, Washington, D. C., for defendants.

Herbert A. Waterman, San Francisco, Cal., for intervening defendants.

Before MacKINNON, Circuit Judge, and HART and GESELL, District Judges.

## MEMORANDUM AND ORDER

PER CURIAM.

The Congress of Railway Unions, an association of six affiliated union organizations, filed a complaint heard by this three-judge Court challenging a decision of the Interstate Commerce Commission concerning the operation of rail traffic through the crowded St. Louis Gateway terminal.[1] Various interested and affected parties were permitted to intervene.[2] The Commission approved an agreement between the St. Louis Southwestern Railway Company ("Cotton Belt") and the Missouri Pacific Railroad Company ("MoPac") whereby Cotton Belt would purchase fifty percent of the stock in the Alton & Southern Railway Company ("A&S"), constituting all of the stock not already owned by MoPac. This arrangement, supplemented by various agency contracts between the three carriers, was designed to permit Cotton Belt and MoPac to conduct run-through operations through the St. Louis Gateway without stopping to change crews when transferring to the yard track of A&S. Plaintiff attacks the Commission's order on three grounds: (1) that it is arbitrary and capricious in light of the evidence before the Commission and the public interests at stake, (2) that it permits the intervenor carriers to violate the Safety Appliance Acts, 45 U.S.C. §§ 1–16, and (3) that it deprives railroad employees of their rights under the Railway Labor Act, 45 U.S.C. §§ 151–163.

■ There is no indication of arbitrary or capricious agency action. The Commission found that the proposed agreement was in the public interest in

---

1. St. Louis Southwestern Railway Co. and Missouri Pacific Railroad Co.—Operation in Part—Alton & Southern Railroad, Finance Docket No. 26427, 342 I.C.C. 498 (Dec. 15, 1972).

2. The United Transportation Union intervened as a party-plaintiff; and the St. Louis Southwestern Railway Company, the Southern Pacific Transportation Company, the Chicago and North Western Transportation Company, the Missouri Pacific Railroad Company, and the Alton & Southern Railway Company intervened as party-defendants.

that it would save operating time, increase efficiency and dependability, reduce vandalism and pilfering from standing trains, decrease blocking of public crossings, improve the handling of railroad traffic, and lessen the risk of employee injuries. Plaintiff no longer challenges these findings, and the Court accepts them as supported by substantial evidence in the record. Northern Line Merger Cases, 396 U.S. 491, 503, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970); Penn-Central Merger Cases, 389 U.S. 486, 498–499, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968); McLean Trucking Co. v. United States, 321 U.S. 67, 87–88, 64 S.Ct. 370, 88 L.Ed. 544 (1944).

■ Plaintiff's contention that the Commission's order inferentially condones violations of the Safety Appliance Acts is also without merit. No statute or regulation requires inspection of trains at corporate interchanges, although carriers frequently conduct such inspections to protect themselves against the liability that attaches to the hauling of railroad cars with defective equipment. Here the carriers plan to inspect their rolling stock at the St. Louis yards rather than at the corporate interchanges. If this procedure does not meet the carriers' legal obligations under the Safety Appliance Acts, plaintiff is free to seek enforcement of the Acts against them by application to a United States Attorney or to the Secretary of Transportation. *See* 45 U.S.C. §§ 13–15. Nothing in the Commission's order bars such enforcement or sanctions violation of the Acts; on the contrary, its decision specifically notes that "the applicants' operating contracts provide that they must be carried out without violation of the law." A similar fact situation prompted this Court to reject the union claim in United Transportation Union v. United States, 337 F.Supp. 410 (D.D.C.) (three-judge court), aff'd, 406 U.S. 964, 92 S.Ct. 2410, 32 L.Ed.2d 663 (1972), and that decision is controlling.

■ Finally, plaintiff originally claimed that the Commission's order, by imposing the so-called "New Orleans conditions" upon the railroads, deprived plaintiff's members of their right under the Railway Labor Act to negotiate more favorable protective arrangements. At oral argument, however, plaintiff urged that the order only imposes a *minimum* level of employee protection, and that labor is free to negotiate a better arrangement if it chooses to do so. Thus, plaintiff no longer asserts that the order is illegal on its face, and that is the only claim that is properly before this three-judge Court. Questions as to enforcement of the "New Orleans conditions" are premature, and cannot be brought before the Court through plaintiff's bootstrap argument seeking, in effect, an advisory opinion by attempting to invoke ancillary jurisdiction. Whether or not plaintiff is bound by the order's arbitration clause, whether or not it may require the carriers to negotiate concerning better protective provisions, and whether or not labor may eventually strike to secure such more favorable provisions after compliance with the Railway Labor Act are purely speculative issues which may only be raised on an entirely different record before a single judge when the genuine issues of fact and law are ripe.

■ The Court is concerned only with the present situation as reflected in the record before it. The inclusion of the "New Orleans conditions" into an I.C.C. order is wholly consistent with the Commission's past practice and has been sustained by the courts. *See* Brotherhood of Maintenance of Way Employes v. United States, 366 U.S. 169, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961). There is nothing in the Interstate Commerce Act which suggests that a Union must consent to the Commission's approval of an intercarrier arrangement or of employee protective conditions attached thereto. *Cf.* International Ass'n of Machinists and Aerospace Workers v. Northeast Airlines, Inc., 473 F.2d 549 (1st Cir.), cert. denied, 409 U.S. 845, 93 S.Ct. 48, 34 L.Ed.2d 85 (1972). If and when operation of the order in question prevents labor from exercising its rights under the Railway Labor Act, a justiciable controversy may arise. The Court

will not now enter an advisory opinion anticipating events that are speculative and may never occur, especially where some of the carriers that would be affected by such an opinion were not parties to the proceedings before the Commission and where the possibility that such rights were in jeopardy was not even raised during the Commission's proceedings.

In light of the foregoing findings of fact and conclusions of law, plaintiff's request to review and enjoin, set aside or annul the decision and order of the Interstate Commerce Commission in Finance Docket No. 26427 is hereby denied. The Court declines to accept the ancillary jurisdiction urged by plaintiff. Each party shall bear its own costs and attorneys' fees.

So ordered.